

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 DEC -9  P 4: 19

LORETTA G. WHYTE
CLERK

## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARLOS COOPER #108399** | **CIVIL ACTION** |
| **versus** | **NO. 04-3310** |
| **BURL CAIN, WARDEN** | **SECTION: "I" (3)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No. _____

Petitioner, Carlos Cooper, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On June 15, 2000, he was convicted of forcible rape in violation of La.Rev.Stat.Ann § 14:42.1.[2] On August 28, 2000, he was found to be a fourth offender and was sentenced as such to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[3] On February 15, 2002, the Louisiana First Circuit Court of Appeal affirmed his conviction, habitual offender adjudication, and sentence.[4] He then filed with the Louisiana Supreme Court a petition for a writ of certiorari and/or review which was denied on February 21, 2003.[5]

On May 15, 2003, petitioner filed with the state district court an application for post-conviction relief[6] which was denied on June 2, 2003, on the ground that the application was deficient.[7] On June 19, 2003, he resubmitted a proper and complete post-conviction application.[8] On July 2, 2003, the state district court denied that application on the merits.[9] He next filed with the

---

[2] State Rec., Vol. III of IV, transcript of June 15, 2000, p. 229; State Rec., Vol. I of IV, minute entry dated June 15, 2000; State Rec., Vol. I of IV, jury verdict form.

[3] State Rec., Vol. III of IV, transcript of August 28, 2000; State Rec., Vol. I of IV, minute entry dated August 28, 2000; State Rec., Vol. I of IV, Reasons for Judgment dated August 31, 2000.

[4] State v. Cooper, No. 2001-KA-1396 (La. App. 1st Cir. Feb. 15, 2002) (unpublished); State Rec., Vol. IV of IV.

[5] State v. Cooper, 837 So.2d 625 (La. 2003) (No. 2002-KO-1062); State Rec., Vol. IV of IV.

[6] State Rec., Vol. IV of IV.

[7] State Rec., Vol. IV of IV, Reasons for Judgment dated June 2, 2003.

[8] State Rec., Vol. IV of IV.

[9] State Rec., Vol. IV of IV, Reasons for Judgment dated July 2, 2003.

Louisiana First Circuit Court of Appeal an application for a supervisory writ which was denied on October 20, 2003.[10] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[11] which was denied on November 15, 2004.[12]

On November 18, 2004, petitioner filed this federal application for *habeas corpus* relief.[13] In support of his application, he claims:

1. Petitioner's rights were violated when Detective Bobby Juge was allowed to testify regarding "other crimes" evidence and the trial judge denied a motion for a mistrial;

2. Petitioner's rights were violated when Detective Juge was allowed to testify as an expert concerning the photographs and bruises of the alleged victim;

3. The testimony of the state's witnesses was inconsistent with the evidence and was perjurious; and

4. Petitioner received ineffective assistance of counsel.

---

[10] State *ex rel.* Cooper v. State, No. 2003-KW-1752 (La. App. 1st Cir. Oct. 20, 2003) (unpublished); State Rec., Vol. IV of IV.

[11] State Rec., Vol. IV of IV.

[12] State *ex rel.* Cooper v. State, 887 So.2d 472 (La. 2004) (No. 2003-KH-3165); State Rec., Vol. IV of IV. During the course of those state post-convictions proceedings, petitioner continued to file for various forms of relief in the state courts, including filing a motion to vacate and/or correct an illegal sentence which was denied on August 19, 2003, as well as a petition for a writ of *habeas corpus* which was denied on September 10, 2003. State Rec., Vol. IV of IV. However, those efforts, including the related filings in the state appellate courts, are not germane to this federal proceeding in light of the state's concession that petitioner's federal application is timely filed.

[13] Rec. Doc. 2.

The state concedes that petitioner's federal application is timely filed and that he exhausted his state court remedies.[14] Accordingly, this Court will address the merits of petitioner's claims.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law

---

[14] Rec. Doc. 8, p. 6.

> is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>,
> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

<u>Facts</u>

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts

of this case as follows:

> Between November and January of 1999, K.C., the victim,
> and the defendant met and went out on several occasions. During this
> time, the defendant and K.C. had consensual sex. On the evening of
> January 18, 1999, K.C. was driven home by a male friend, Gary.
> While they were talking at her home in Lacombe, the defendant
> arrived. K.C. suggested Gary sleep at her home, and Gary went to a
> bedroom to sleep. K.C. then told the defendant she was tired and that
> he needed to leave. She walked the defendant out to his car. When
> he started kissing her, she firmly told him "no," but he began fondling
> her. She resisted, but the defendant dragged her toward the garage,
> where he had intercourse with her. K.C. testified that she did not
> scream for help because she was afraid that the defendant would hurt
> her. At trial, the defendant claimed that K.C. consented to the sexual
> act.[15]

<u>"Other Crimes" Evidence and Denial of Mistrial</u>

Petitioner's first claim is that his rights were violated when Detective Bobby Juge

testified regarding "other crimes" evidence and the trial court denied the defense's motion for a

mistrial. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> In his sole pro se assignment of error, the defendant asserts
> that the trial court erred in denying his motion for mistrial based upon
> the introduction of other crimes evidence.

---

[15] <u>State v. Cooper</u>, No. 2001-KA-1396 (La. App. 1st Cir. Feb. 15, 2002); State Rec., Vol. IV of
IV.

- 5 -

During the cross-examination of Detective Bobby Juge, the defense counsel questioned the officer about the defendant's reaction to being charged with rape. The officer explained that he called the jail and "told them to pull him up, because I had other charges for him." The defense counsel then moved for a mistrial. The trial court denied the defendant's motion and admonished the jury to disregard the officer's remark.

Louisiana Code of Criminal Procedure art. 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. A police officer is not a court official within the meaning of LSA-C.Cr.P. art. 770. Nevertheless, a prejudicial remark by an experienced police officer should be viewed with considerable concern as to the fairness of the trial and may require the granting of a mistrial, especially if the remark was precipitated by or should have been anticipated by the district attorney. The decision as to the necessity of granting a mistrial under these circumstances is left to the sound discretion of the trial court. See State v. Brown, 95-0755 (La. App. 1 Cir. 6/28/96), 677 So.2d 1057.

A remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant of a fair trial. LSA-C.Cr.P. art. 771. A mistrial under the provisions of LSA-C.Cr.P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. Brown, 677 So.2d at 1068.

While the detective's remark was improper, we do not consider it a deliberate attempt by the detective to unfairly prejudice the defendant. Furthermore, this reference to other charges was not an unambiguous reference to a particular crime committed or alleged to have been committed by the defendant. See Brown, 677 So.2d at 1068.

The defense counsel's voir dire questions and the defendant's own trial testimony revealed the defendant's criminal history. The trial court decided that an admonition to the jury to disregard this remark was sufficient. Considering all of the above, we find no indication that the defendant was unable to obtain a fair trial because of this remark. Accordingly, we find no abuse of discretion in the trial court's ruling denying the defendant's motion for a mistrial.

Petitioner is essentially arguing that the state court erred in applying La.C.Crim.P. arts. 770 and 771 concerning the granting of a mistrial.  However, such a claim is grounded in state law and is not cognizable in this federal proceeding.  "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'"  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

Moreover, there is no basis for finding that petitioner's federal constitutional right to a fair trial was violated by Juge's comment.  The Court notes that the comment was in no way elicited by the prosecution; it was made during cross-examination by defense counsel.  Moreover, the nonspecific reference to "other charges" was unanticipated and fleeting.  There is no reason to believe that the judge's admonition to the jury was insufficient, ignored by the jurors, or in any way contributed to petitioner's conviction.  Rather, it is evident that conviction resulted from the compelling testimony of the victim and the state's other witnesses.

<u>Detective Juge's Testimony</u>

Petitioner next claims that his rights were violated when Detective Juge was improperly allowed to present "expert" testimony.  At trial, Juge was allowed to testify regarding photographs taken in his presence by Sergeant Carl Fullilove.  Petitioner claims that Juge was essentially allowed to testify as an expert in photography and medical conditions without being properly qualified.  In particular, petitioner objects to the following portions of Juge's testimony:

> Q [by Mr. Gracianette, the prosecutor].  Why were pictures taken of [the victim's] back, Officer?
>
> A [by Detective Juge].  She had scrapes on her back that apparently was caused by the inside of the shed.

Q.  When you're taking pictures of a body such as the one here contained in S-9, do these scratches, scrapes and bruises always come out clearly when you're using a flash?

A.  No, sir.  Sometimes the flash covers it up because of the brightness of the flash.

Q.  You did observe something on her back?

A.  Yes, sir.  You see the marks up here around there, some marks. There is a picture of her arm, they have a bruise towards the top.  You really can't see it with the flash.

Q.  Again, Officer, you need to identify for the record.

A.  This is State's No. 11.

Q.  Thank you.  Again, did the bruise on the arm come out very well?

A.  No, sir.

Q.  Do you have an explanation?

A.  The flash which covers the light.  And this is also a picture –

Q.  Let me stop you right there for a second, Officer.  How would you describe the bruise to the jurors, please, if you had to identify it?

A.  It appeared to be a pressure mark of a hand or print, a round circular mark.

Q.  As if somebody grabbed her?

BY MR. LIBERTO [defense counsel]:
I'm going to object to the leading, Your Honor.

BY THE COURT:
Don't lead your witness.

BY THE WITNESS:
It was apparently where it was pushed down, pushed with a thumb or handprint, left a circular bruise.  This is also a picture

- 8 -

of her back which is State No. 12.  The flash makes it a lot lighter
than the arm.  Then No. 10 is the same picture, just a closeup.  It
shows you what the flash does.  This is State's No. 13.  This is a
picture of the victim's buttocks.  You notice up here you have some
debris, which was the same debris which was located in the garage in
the open carport area where the boat was.  It would be up toward the
top.  State No. 14 would be the victim's left breast.

If you look at it real close there, there is a mark toward the
bottom.  It appears to be a bite mark.  That's State's Exhibit No. 14.
State No. 15 is also going to be the same breast, just a closeup on it.
And you have a mark kind of on an angle up there.

EXAMINATION BY MR. GRACIANETTE:

Q.  Can you point it out to the jurors what you're referring to?

A.  Right in this area (Indicating).

Q.  Would you show them to the jurors over here?

A.  Toward this area.  In person, you could see it was a bite mark in
State's No. 16, you see here –

BY MR. LIBERTO:
Your Honor, I object to the officer giving a narrative
as to what they see in a picture.  They're going to be shown the
pictures, they can see what the picture represents.  I believe the law
says he may state that the picture is an accurate reproduction, but he
can't describe what the picture is.  It's self-proving.

BY MR. GRACIANTTE:
Judge, he can absolutely describe what is in the picture
and what he observed at the time in question and how it might be
different because of the problems inherent in photography and the
flash bulb that goes off.

BY MR. LIBERTO:
Now, that's different, Your Honor.

BY THE COURT:
I'm going to sustain the objection to the extent that the
officer should not editorialize as to what is in the picture.  He can,

- 9 -

perhaps, give some type of opinion as to the photographic conditions, along those nature, but I'm going to sustain the objection.

> BY MR. GRACIANETTE:
> Can he point out bruises as he sees them in the picture for the purposes of demonstrating to the jury in terms of this right here is what I'm looking at?

> BY THE COURT:
> I don't think that would be appropriate, how the bruise was there or how it came, I don't think he can comment on that.

> BY MR. GRACIANETTE:
> Yes, sir.[16]

Petitioner also objects to the following portion of Juge's testimony during cross-examination:

> Q [by Mr. Liberto]. Now, Officer, how long have you been taking photographs in your investigation?

> A [by Juge]. How long have I been taking them?

> Q. Yes, sir. Or how long have you been observing them being taken and being present when they were taken?

> A. Just about every scene we go on, I am present while or during the taking of the photographs.

> Q. I show you State's Exhibit No. 11 and ask you, what does that represent?

> A. That's the victim's arm.

> Q. And is there a bruise or what you're calling a bruise there?

> A. There was a bruise prior to the picture being taken, yes.

> Q. Do you know where it is in the photo, where it would be?

---

[16] State Rec., Vol. II of IV, transcript of June 15, 2000, pp. 47-50.

A.  Up towards the upper portion of the arm, the medial portion.

Q.  And do you see it in this photograph?

A.  No, sir.

Q.  Isn't there after all the years of taking pictures of bodily parts a way to make a bruise show up in pictures?

A.  You have two pictures taken of the pictures of the back showing, one picture shows the back with the bruise and one shows –

Q.  Would that be State's Exhibit-12?

A.  Yes, sir.

Q.  Let's do this one first.  Where is the bruises?

A.  You can't see it in that picture in this area.  The photograph above –

Q.  I will get to that.  I am on 12 right now.  Where is the bruise on 12?

A.  You can't see it.

Q.  Okay.  No. 10, what does that depict?

A.  That's depicting the bruising on the back right up in there.

Q.  Do you know what caused that?

A.  No, sir.  Evidently or to my determination would have been the wood in the shed.

Q.  Okay.  Wood?

A.  Wood between the boat and the wall.

Q.  That indicates what, that someone was unclothed?

A.  No.  It is a scratch or a bruise.

Q.  I think that's 13.  What does No. 13 depict?

A.  Depicts the upper portion of the lady's buttocks.  You will see some trash material.

Q.  Do you know when these were taken?

A.  Yes, sir.  They were taken at the house.

Q.  After the hospital and all that?

A.  Yes, sir.

Q.  Okay.  Do you know in the course of your investigation whether after this alleged rape occurred, whether or not Ms. Carminati ever told anyone she went into the bathroom, washed up and then came back out into the living room?

A.  Yes, she did.

Q.  This was taken some what, eight, ten hours later?

A.  Yes, sir.

Q.  I'm going to ask you what are you depicting on No. 14 other than a breast?

A.  The nipple of the breast and bruising under the breast, which is in this area.  Upon looking with the naked eye, you can see actual teeth marks.

Q.  You can see teeth marks here?

A.  No, sir.  With the naked eye was pretty —[17]

As an initial matter, the Court notes that the specified testimony by Juge occurred

largely without objection by the defense and, on the few occasions where objections were made, the

---

[17] State Rec., Vol. II of IV, transcript of June 15, 2000, pp. 59-61.

objections were sustained.  Moreover, in any event, the Court finds that the testimony in question did not violate petitioner's right to a fair trial.

Juge was not offered as an expert witness and did not testify as such.  Rather, he testified as a lay witness offering opinions and inferences based on his own perceptions.  Such testimony is clearly permitted under Louisiana evidence law.  La. Code Evid. art. 701 ("If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue."); State v. Lowery, 609 So.2d 1125, 1128 (La. App. 2nd Cir. 1993) ("A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert."); see also State v. Debrow, 781 So.2d 853, 963 (La. App. 2nd Cir. 2001); State v. Gibson, 693 So.2d 286, 291 (La. App. 3rd Cir. 1997).

Further, even if the testimony had been improper, which it was not, that alone would not be sufficient to warrant federal *habeas* relief.  Rather, the United States Fifth Circuit Court of Appeals has noted that "[t]he erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").  Here, Juge's comments regarding the photographs and the bruises hardly rise to that level in light of the overwhelming evidence against petitioner, including the compelling testimony of the victim.

<u>Inconsistent, Perjurious Testimony</u>

Petitioner claims that his rights were violated when the state produced witnesses whose testimony was inconsistent and perjurious.  The witnesses in question were Gary Miley and Katherine Carminati, the victim.

Regarding purported inconsistencies, petitioner points to only two.  First, Miley testified that he had not seen Carminati for almost one year because he had been in basic training.[18]  However, Carminati testified that she had last seen Miley two or three months prior to the rape.[19]  That inconsistency is hardly monumental and certainly falls far short of being evidence of perjury.  Second, Carminati testified that Miley had previously been to her home;[20] however, he testified that he had not.[21]  That testimony is not even necessarily inconsistent.  It appears that Carminati and Miley were referring to different homes.  Carminati testified that she had lived at the location where she was raped for only approximately three months,[22] and, in light of the fact that they had not seen each other recently, she presumably meant that Miley had been to a prior home.

Petitioner next points to several portions of Carminati's testimony that he argues make no sense.  First, Carminati testified that she did not know petitioner's last name, despite the

---

[18]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 87, lines 19-22.

[19]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 107, line 2.

[20]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 107, lines 3-5, and p. 109, lines 28-30.

[21]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 101, lines 8-19.

[22]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 108, lines 22-23.

fact that they had gone out several times and had consensual sexual relations on two occasions.[23] Second, she testified that she did not scream during the rape,[24] a fact petitioner contends is illogical since Miley was in the house and, presumably, could have come to her rescue.  Third, Carminati testified that she initially was not going to call the police,[25] a fact petitioner contends is illogical if she had in fact been raped.  There is no evidence whatsoever that any of those statements were perjurious.  Knowing a sexual partner's last name, while admirable, is hardly required.  Carminati explained why she did not scream, i.e. she was afraid to do so.[26]  Additionally, she explained why she initially did not want to call the police, i.e. she was scared and wanted to avoid being humiliated by the police.[27]

Accordingly, petitioner has presented no evidence that either Carminati or Miley committed perjury.  Moreover, as the triers of fact, the jurors must decide what weight, if any, to give to witness testimony.  In this case, the jurors obviously believed Carminati and Miley, despite any minor inconsistencies in the witnesses' testimony.  In light of those considerations, petitioner clearly is not entitled to federal *habeas* relief based on any such minor inconsistencies.

---

[23]  State Rec., Vol. III of IV, transcript of June 15, 2000, p. 127, lines 25-26, and p. 130, lines 29-30.

[24]  State Rec., Vol. II of IV, transcript of June 15, 2000, pp. 112-13.

[25]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 116.

[26]  State Rec., Vol. II of IV, transcript of June 15, 2000, pp. 112-13.

[27]  State Rec., Vol. II of IV, transcript of June 15, 2000, p. 116; State Rec., Vol. III of IV, transcript of June 15, 2000, p. 137.

### Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In the instant case, petitioner contends that his counsel was ineffective in several respects. The Court will address each of petitioner's contentions.

First, petitioner argues that his counsel was ineffective in failing to object when the prosecutor made allegedly inappropriate comments. Petitioner points to the following three comments by the prosecutor. During his opening argument, the prosecutor stated: "[The victim] is a very passive, naive, sweet person, trusting in many ways."[28] During his closing argument, the

---

[28] State Rec., Vol. II of IV, transcript of June 12, 2000, p. 8, lines 18-19.

prosecutor stated: "Sergeant Wayne Wicker of the Sheriff's Office comes out.  He describes a little girl behind the covers in her bed trembling, shaking, speaking in a broken, soft, whispered voice when explaining what happened that evening."[29]  Also during his closing argument, the prosecutor stated: "Yes, she didn't know his last name.  So what?  Who cares about that?  We know that Carlos Cooper was the person who committed this crime."[30]  Petitioner argues that these comments were improper because they vouched for the credibility and innocence of the victim and relayed to the jury the prosecutor's belief that petitioner was in fact guilty as charged.

It is true that it is improper for a prosecutor to vouch for a witness' credibility or to express an opinion as to the defendant's guilt where there is underlying an implication that the prosecutor's statements are based on additional personal knowledge about the witness or the facts of the case that are in not in evidence.  See, e.g., United States v. Munoz, 150 F.3d 401, 414 (5th Cir. 1998);  State v. Duke, 358 So.2d 293, 294 (La. 1978); State v. Sercovich, 246 La. 503, 519, 165 So.2d 301, 307-08 (La. 1964).  However, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record.  See, e.g., Nichols v. Scott, 69 F.3d 1255, 1282-83 (5th Cir. 1995); State v. Sawyer, 350 So.2d 611, 614 (La. 1977); State v. Palmer, 775 So.2d 1231, 1236 (La. App. 1st Cir. 2000).

In the instant case, when the opening and closing arguments are reviewed in their entirety, it is evident that the prosecutor's statements, taken in context, were not inappropriate but

---

[29]  State Rec., Vol. III of IV, transcript of June 12, 2000, p. 185, lines 5-10.

[30]  State Rec., Vol. III of IV, transcript of June 12, 2000, p. 185, lines 23-26.

rather were permissible commentary concerning the evidence at trial.  Therefore, any objection to the comments would have been meritless.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5ᵗʰ Cir. 1994); see also United States v. Kimler, 167 F.3d 889, 893 (5ᵗʰ Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  Moreover, "[a] decision not to object to a closing argument is a matter of trial strategy." Drew v. Collins, 964 F.2d 411, 423 (5ᵗʰ Cir. 1992).  Even where an objection might have some small chance of succeeding, an attorney is allowed to make a strategic choice for forego such an objection to avoid antagonizing the jury. See Wiley v. Puckett, 969 F.2d 86, 102 (5ᵗʰ Cir. 1992).[31]

Second, petitioner argues that his counsel was ineffective in failing to object when Juge testified as an expert regarding the photographs and bruises of the victim.  For the reasons previously set forth in this opinion,[32] Juge's testimony was not inappropriate.  Accordingly, counsel did not perform deficiently in failing to make meritless objections to the testimony.

---

[31] This should especially be true with respect to possible objections to opening and closing arguments, which jurors are already instructed not to view as evidence.  In this case, for example, jurors were instructed:

> [Y]ou heard opening statements wherein the attorneys were permitted to tell you the facts that the attorneys expected to prove.  In closing arguments, the attorneys were permitted to present their views on what the evidence has shown or not shown and what conclusions they think may be drawn from the evidence.  The opening statements and closing arguments are not evidence.

State Rec., Vol. III of IV, transcript of June 12, 2000, p. 217, lines 22-30.

[32] See page 13 of this opinion.

Lastly, petitioner argues that his counsel was ineffective in failing to challenge the inconsistencies in the witnesses' testimony.  Again, as noted previously in this opinion, the "inconsistences" noted by petitioner were relatively insignificant or were explained by the witnesses.[33]  Counsel should not be deemed ineffective in making a strategic choice not to prolong and highlight damaging testimony by prosecution witnesses.

Accordingly, petitioner has failed to demonstrate that the state court decisions denying his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claims that his counsel was ineffective.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Carlos Cooper be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

---

[33] See pages 14-15 of this opinion.

New Orleans, Louisiana, this ninth day of December, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**